CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
C. J. POTTER, IV, ESQ.
Nevada Bar No. 13225
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada 89102
Tel:  (702) 385-1954
Fax: (702) 385-9081

JAY A. KENYON, ESQ.
Nevada Bar No. 6376
YAN KENYON
7881 West Charleston Boulevard #165
Las Vegas, Nevada 89117
Tel:  (702) 888-0000
Fax: (702) 888-0011
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

HARVESTER HARRIS,

      Plaintiff,

                            Case No.  2:15-cv-00337-GMN-PAL

vs.

CITY OF HENDERSON; a
political subdivision of the State of
Nevada; LAS VEGAS METROPOLITAN
POLICE DEPARTMENT, a political
subdivision of the State of Nevada;
SHERIFF DOUG GILLESPIE, individually;
CHIEF PATRICK MOERS, individually;
OFFICER SCOTT NIELSON, P#4408, individually;
DETECTIVE PURDUE, individually; DOE
OFFICERS III-X; and JOHN DOES I-X, inclusive,

      Defendants.
_____/

## PLAINTIFF'S OPPOSITION TO HENDERSON DEFENDANTS'

## MOTION TO DISMISS

      COMES NOW, Plaintiff, HARVESTER HARRIS, by and through his attorneys of record,

CAL J. POTTER, III, ESQ. and C. J. POTTER, IV, ESQ. of POTTER LAW OFFICES, and JAY

KENYON, ESQ. of YAN KENYON and hereby Opposes Defendants' Motion to Dismiss.  (Doc.

39).

1      This Opposition is based upon the pleadings and papers on file herein, the points and

2  authorities attached hereto, and any oral arguments the Court may entertain at the hearing of this

3  matter.

4          DATED this 28th day of September, 2015

5

6                                                    POTTER LAW OFFICES
                                                     YAN KENYON
7
                                                     By:   /s/ C. J. Potter, IV, Esq.
8                                                    CAL J. POTTER, III, ESQ.
                                                     Nevada Bar No. 1988
9                                                    C. J. POTTER, IV, ESQ.
                                                     Nevada Bar No. 13225
10                                                   1125 Shadow Lane
                                                     Las Vegas, Nevada 89102
11
                                                     JAY A. KENYON, ESQ.
12                                                   Nevada Bar No. 6376
                                                     YAN KENYON
13                                                   7881 West Charleston Boulevard #165
                                                     Las Vegas, Nevada 89117
14                                                   *Attorneys for Plaintiff*

15                    **MEMORANDUM OF POINTS AND AUTHORITIES**

16                                          **I.**

17                                        **FACTS**

18  **A.    FACTS GIVING RISE TO THIS LITIGATION**

19          On or about March 08, 2013, Mr. Harris ("Plaintiff") was working as a cab driver for a duly

20  licensed taxicab company and was driving his marked cab unit and was responding to a call at the

21  time he was stopped by an unmarked SUV with LVMPD Officer Nielson and Henderson Detective

22  Perdue. (Doc. 28 ¶ 20). The Plaintiff stopped his vehicle and encountered two hostile individuals,

23  Defendant Nielson and Defendant Perdue, who identified themselves by badge as police officers.

24  (Doc. 28 ¶ 21).

25          At that time, the Plaintiff was not previously injured and advised the first officer that he

26  was being recorded and asked him why he had to be so rude and angry. Mr. Harris was initially

27  asked by Defendant Nielson "You in a hurry?" Mr. Harris responded that he was responding to a

28  radio call.  Mr. Harris also advised Defendant Nielson and Defendant Perdue that they were on

1  camera.  Defendant Nielson then threatened Mr. Harris with calling the Taxicab Authority if he
2  did not watch his mouth.  (Doc. 28 ¶ 22).

3         Despite the Plaintiff not having committed any crime, Defendant Perdue then slammed his
4  badge shield against the passenger window identifying himself as a police officer.  Both Defendant
5  Nielson and Defendant Perdue were in plain clothes and not acting as traffic officers.  Defendant
6  Perdue then yelled profanity words to the effect that "we're not fucking playing games." Defendant
7  Perdue then continued his profanity by telling Mr. Harris that he was going to fucking jail.  Mr.
8  Harris advised both officers the he was not resisting and attempted to state that he did not know
9  they were police officers when they got out of their car.  Defendant Nielson then grabbed Mr.
10 Harris' hands and maliciously pulled his finger to inflict pain. (Doc. 28 ¶ 23).

11        Defendant Perdue failed to prevent Defendant Nielson's use of force which was committed
12 in his presence. On the contrary, Defendant Perdue chose not to de-escalate the situation.  (Doc.
13 28 ¶ 24). As a result of Defendants' use of force, and choice not to prevent the use of excessive
14 force, Plaintiff has suffered permanent injuries to his right middle finger.  (Doc. 28 ¶ 25).
15 Moreover, Defendant Nielson and Defendant Perdue unreasonably seized Plaintiff. (Doc. 28 ¶ 26).

16 **B.     SPECIFIC FACTUAL ALLEGATIONS CONCERNING CHIEF MOERS**

17        Defendant Chief Patrick Moers (hereinafter "Chief Moers") at all material times was Chief
18 of Police for the Henderson Police Department and was acting within the course and scope of his
19 employment.  As Chief, Defendant Moers is a policy-making official for Henderson Police
20 Department with the power to make official and final policy for Henderson.  Additionally,
21 Defendant Moers  personally ratified, condoned and approved the acts of Defendant Perdue
22 Defendant Moers is sued in his individual capacity. (Doc. 28 ¶ 10). Chief Moers was the final
23 policy maker, and a supervisor of Defendant Perdue, who chose not to prohibit officers from
24 violating citizen's Fourth Amendment rights. Defendant Moers is the policy maker for Henderson
25 and has failed to discipline and terminate Officers for physical violence against citizens. (Doc. 1
26 ¶ 42) (Due to a typographical error, Plaintiff inadvertently stated that Chief Moers is the policy
27 maker for "LVMPD" in this paragraph. In actuality Moers is the policy maker for Henderson
28 Police Department). The acts and omissions of all Defendants as set forth herein were at all

material times pursuant to the actual customs, policies, practices and procedures of Henderson, which were personally created by Defendant Moers. (Doc. 28 ¶ 16). Henderson maintain de facto policies to detain and handcuff citizens as a form of intimidation and in violation of well-settled law by the Ninth Circuit Court of Appeals.  (Doc. 28 ¶ 30).

Defendant Moers chose to implement and enforce the guidelines, procedures, and regulations of Henderson and supervised the conduct of the employees of Henderson to ensure they act in conformance with well-settled constitutional law concerning seizures, arrests and legal basis for the detention of individuals as well as the use of force in handcuffing and torturing a citizen with unreasonable pain compliance techniques. (Doc. 28 ¶ 43). Defendant Moers' choice not to enforce the laws of the State of Nevada and the regulations of Henderson encouraged and caused constitutional violations by the Defendant officer. (Doc. 28 ¶ 44).

**C.   PLAINTIFF'S MONELL CLAIM AGAINST HENDERSON**

The unconstitutional actions and/or omissions of Defendant Perdue, as  well as other officers employed by or acting on behalf of Defendant Henderson, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Henderson,  stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for Henderson:

> A.   To arrest and or detain individuals for traffic violations by handcuffing citizens and the use of pain compliance techniques on traffic stops.
>
> B.   To fail to use appropriate and generally accepted law enforcement procedures by undercover officers.
>
> C.   To fail to use appropriate and generally accepted law enforcement procedures in requiring use of force reports to be used where an injury occurs.
>
> D.   To cover-up violations of constitutional rights by any or all of the following:

. . .

. . .

4

i.    by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, and unlawful seizures and arrests, and/or handling of injured citizens;

ii    by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity by refusing to conduct a full internal affairs complaint against the Defendant officer; and by failing to advise citizens of the violation and findings and disciplines.

iii    by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information.

E.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and

F.    To tolerate poorly performing officers and failing to adequately discipline those officers for misconduct. (Doc. 28 ¶ 49).

The aforementioned customs, policies, practices, and procedures, were the moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. § 1983.(Doc. 1 ¶ 54).

Henderson participated in the coverup of the false arrest and false imprisonment of, and use of excessive force upon, Plaintiff. Moreover, Henderson maintained *de facto* policies, and organizational customs and cultures to handcuff and use painful holds on citizens in traffic stops and to give "street justice" to individuals whom Henderson officers believed had disrespected their authority. Henderson also refused to identify Doe Officers and to further conduct its investigation

in a transparent matter. Defendant Henderson's *de facto* policies, and organizational customs and cultures were the proximate cause behind the conduct causing Plaintiff to suffer the constitutional violations.  (Doc. 28 ¶ 50).

Moreover, upon information and belief, the unconstitutional actions and/or omissions of Defendant Perdue, as described above, were approved, tolerated and/or ratified by policy-making officer Defendant Moers for Henderson.  Plaintiff is informed and believes, and thereupon alleges, the details of this incident has been revealed to Defendant Moers, and that such policy maker has direct knowledge of the fact that the injury and false imprisonment of Plaintiff was not justified, but rather represented an unconstitutional display of unreasonable and excessive force. Notwithstanding this knowledge, Defendant Moers has approved Defendant Perdue's actions, and has made a deliberate choice to endorse Defendant Perdue's excessive force.    By so doing, Defendant Moers has shown affirmative agreement with the individual defendant officers' actions, and has ratified the unconstitutional acts of the individual Defendant officer. (Doc. 28 ¶ 53).

## II.

## ARGUMENT

### A.    STANDARD OF REVIEW FOR MOTIONS TO DISMISS

A court is required to construe complaints under the Civil Rights Act liberally.  See, Morrison v. Jones, 607 F.2d 1269 (1979). The Court's review of a 12(b) motion is based strictly on the contents of the Complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The Court must accept the allegations as true and construe them in the light most favorable to the Plaintiff.  Abramson v. Brounstein, 897 F.2d 389, 391 (9th Cir. 1990).

A complaint should not be dismissed unless it appears beyond doubt the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  The only elements which need to be present in order to establish a claim for damages under the Civil Rights Act are that the conduct complained of was engaged in under color of state law and that such conduct subjected the Plaintiff to the deprivation of rights, privileges or immunities secured by the Constitution of the United States. Morrison v. Jones, 607 F.2d 1269 (1979) citing Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962).

In <u>Morrison</u>, *supra*, the court stated, "at this preliminary stage of the proceedings, we cannot say that [the Plaintiff] has failed to state a claim for relief based upon her constitutionally secured rights to procedural due process of law and her substantive familial rights that have long been considered the "basic civil rights of man." <u>Id.</u> Though Morrison's amended complaint was inartfully drafted, the court stated, "[it] is required to construe complaints under the Civil Rights Act liberally." <u>Id.</u>

For a dismissal under 12(b)(6) to stand on appeal to the Ninth Circuit Court of appeals, it must appear to a certainty that plaintiff would not be entitled to relief under any set of facts that could be proved. *See* <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987). A dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed de novo. <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).

**B. PLAINTIFF'S COMPLAINT IS SUFFICIENTLY PLEAD PURSUANT TO FED R. CIV. PRO 8(A) WITH FACTUAL BASIS TO WITHSTAND DEFENDANTS' MOTION TO DISMISS.**

Federal Rules of Civil Procedure ("FRCP) Rule 8(a) , General Rules of Pleading, provides in *relevant* part:

> (a) <u>Claims for Relief</u>. A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (2) <u>a short and plain statement of the claim</u> showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded. (*Emphasis* Added)

Federal Rule of Civil Procedure 8(a)(2) requires only notice pleading containing "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Allied Signal v. City of Phoenix</u>, 182 F.3d 692 (9th Cir. 1999). This liberal pleading standard only requires that "the averments of the complaint sufficiently establish a basis for judgment against the defendant." <u>Id.</u>, *citing*, <u>Yamaguchi v. United States Dep't of the Air Force</u>, 109 F.3d 1475, 1481 (9th Cir.1997).

**C. PLAINTIFF HAS ALLEGED A "PLAUSIBLE" CLAIM AGAINST DEFENDANT PERDUE**

State officials, sued in their individual capacities, are "persons" within the meaning of section 1983 and may be held personally liable for damages under 42 U.S.C. § 1983 based on actions taken in their official capacities. <u>Hafer v. Melo</u>, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed.

2d 301 (1991). "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).

A person deprives another "of a constitutional right, within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains (emphasis added). Leer v. Murphy, 844 F.2d 628,633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Officers who idly standby and fail to prevent  fellow officers from using excessive force are also liable to the plaintiff. U.S. v. Koon, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994)(judgment aff'd in part, rev'd in part on other grounds, 518 U.S 81, 116 S.Ct. 2038 (1996).

In this case, Plaintiff has specifically alleged that Detective Perdue failed to prevent Officer Nielson use of force which was committed in his presence. On the contrary, Detective Perdue chose not to de-escalate the situation. (Doc. 28, ¶ 24).  As a result of Defendants' use of force, and choice not to prevent the use of excessive force, Plaintiff has suffered permanent injuries to his right middle finger. (Doc. 28, ¶ 25). Moreover, Officer Nielson and Detective Perdue unreasonably seized Plaintiff. (Doc. 28, ¶ 26).

The action of Officer Nielson and Detective Perdue constitutes unreasonable and excessive use of force and deprivation of liberty without due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Detective Perdue failed to intervene in the handcuffing and excessive force used by Officer Nielson.  (Doc. 28, ¶ 29). Defendant was complicit in the constitutional violations of Plaintiff  by violating the constitutional rights of Plaintiff through the use of handcuffing and unlawful detention even though Plaintiff had not committed a crime or was in any way resistant to his authority because the Defendants LVMPD and Henderson maintain de facto policies to detain and handcuff citizens as a form of intimidation and in violation of well-settled law by the Ninth Circuit Court of Appeals.  (Doc. 28, ¶ 30). Plaintiff was willfully, maliciously, and intentionally seized without justification, reasonable

suspicion, or probable cause. Plaintiff told both Defendant Officers he did not know they were police officers initially because they were in a police car; did not have on uniforms; did not use a police siren bubble to stop him; and did not initially show badges and acted rude and belligerent. (Doc. 28, ¶ 31). Officer Nielson and Detective Perdue were acting in a manner that is well known in the law enforcement community as a "Contempt of Cop". (Doc. 28, ¶ 32). That intentional use of an unlawful detention is often referred to as "street justice" where physical violence is used an punishment; such as the twisting and injuring of Mr. Harris' finger. (Doc. 28, ¶ 33). As a direct result of Defendants' unlawful conduct, Plaintiff suffered violations of his constitutional rights including the guarantee to be free from the deprivation of life or liberty without due process of law and from unreasonable force in violation of the Fourth Amendment. (Doc. 28, ¶ 34). As a direct and proximate result of the acts and omissions of Officer Nielson and Detective Perdue, Plaintiff endured pain and further mental suffering, and he was deprived of his physical liberty. (Doc. 28, ¶ 35). The handcuffing and denial of medical treatment against Plaintiff coupled with the unlawful detention of Plaintiff by Officer Nielson and Detective Perdue when Defendant police officers knew Mr. Harris  had committed no crime nor was he a threat to the officers was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the constitutional rights of Plaintiff.  (Doc. 28, ¶ 36). Lastly, at all times Defendant Perdue acted in his official capacity as a law enforcement officer. (Doc. 28, ¶ 12).

Accepting these specific factual allegations as true, as required at the pleading stage, it is apparent that Plaintiff has alleged specific facts which demonstrate that Defendant Perdue's conduct deprived the plaintiff of a federal constitutional right when Defendant Perdue seized the Plaintiff and failed to prevent Defendant Nielson's excessive use of force which was committed in Perdue's presence; and that Defendant Perdue was acting under color of state law. Consequently, Henderson's Motion should be denied.

. . .

. . .

. . .

. . .

**D.**     **PLAINTIFF HAS ALLEGED A "PLAUSIBLE" THEORY OF SUPERVISORY LIABILITY AGAINST CHIEF MOERS**

The United States Court of Appeals for the Ninth Circuit has never required a plaintiff to allege that a supervisor was physically present when the injury occurred. Starr v. Baca, 652 F.3d 1202, 1205-1206 (9th Cir. 2011). Rather, to be held liable the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury. Id.

Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others. Larez v. Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

The Ninth Circuit has addressed the Iqbal decision as it relates to the Supreme Court scaling back supervisory liability under §1983 and Bivens claims. See Castillo v. Skwarski, No. C08-5683BHS, 2009 WL 4844801, at *7, *8 (W.D. Wash. Dec. 10, 2009); Al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir.2009) ("Ninth Circuit identified four general situations in which supervisory liability may be imposed: (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others.").

Chief Moers is a proper party this litigation, and Plaintiffs have asserted "plausible" claims against Moers, because Defendant Moers is the policy making official of Henderson Police Department at all times relevant to this litigation. In Larez v. City of Los Angeles, 946 F. 2d 646 (9th Cir. 1991), The Ninth Circuit held that the police chief could be held individually liable

. . .

. . .

1   because he "condoned, ratified and encouraged the excessive use of force by failing to discipline

2   the individual officers responsible for constitutional violations and by failing to establish new

3   procedures to prevent future occurrences."

4   Additionally, The United States Court of Appeals for the Ninth Circuit has long permitted

5   plaintiffs to hold supervisors individually liable in 42 U.S.C. § 1983 suits when culpable action,

6   or inaction, is directly attributed to them. Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011). The court

7   has never required a plaintiff to allege that a supervisor was physically present when the injury

8   occurred. Id. To be held liable, the supervisor need not be directly and personally involved in the

9   same way as are the individual officers who are on the scene inflicting constitutional injury.Id.

10   Rather, the supervisor's participation could include his own culpable action or inaction in the

11   training, supervision, or control of his subordinates, his acquiescence in the constitutional

12   deprivations of which the complaint is made, or conduct that showed a reckless or callous

13   indifference to the rights of others. Id.

14   In this case, Plaintiff has alleged that Chief Moers was the final policy maker, and a

15   supervisor of Defendant Perdue, who chose not to prohibit officers from violating citizen's Fourth

16   Amendment rights. Defendant Moers is the policy maker for Henderson and has failed to discipline

17   and terminate Officers for physical violence against citizens. (Doc. 28 ¶ 42) (Due to a

18   typographical error, Plaintiff inadvertently stated that Chief Moers is the policy maker for

19   "LVMPD" in this paragraph. In actuality Moers is the policy maker for Henderson Police

20   Department). The acts and omissions of all Defendants as set forth herein were at all material times

21   pursuant to the actual customs, policies, practices and procedures of Henderson, which were

22   personally created by Defendant Moers. (Doc. 28 ¶ 16). Henderson maintain de facto policies to

23   detain and handcuff citizens as a form of intimidation and in violation of well-settled law by the

24   Ninth Circuit Court of Appeals.  (Doc. 28 ¶ 30).

25   Defendant Moers chose to implement and enforce the guidelines, procedures, and

26   regulations of Henderson and supervised the conduct of the employees of Henderson to ensure they

27   act in conformance with well-settled constitutional law concerning seizures, arrests and legal basis

28   for the detention of individuals as well as the use of force in handcuffing and torturing a citizen

with unreasonable pain compliance techniques.(Doc. 28 ¶ 43). Defendant Moers' choice not to enforce the laws of the State of Nevada and the regulations of Henderson encouraged and caused constitutional violations by the Defendant officer. (Doc. 28 ¶ 44). Lastly, Plaintiff alleged that Chief Moers personally ratified, condoned and approved the acts of Defendant Perdue. (Doc. 28 ¶ 10).

Consequently, Plaintiff has alleged a viable theory of recovery against Chief Moers and Defendant's Motion should be denied because Defendant's argument concerning Moers' lack of personal participation misapprehends the law of this jurisdiction.

**E.  PLAINTIFF HAS ALLEGED A "PLAUSIBLE" MONELL CLAIM AGAINST HENDERSON**

A plaintiff can establish municipal liability under 42 U.S.C. § 1983 in one of three ways. Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992). "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Id. "Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenge action itself thus constituted an act of official governmental policy." Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)). "Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. Id. at 1346-47 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

**1.  Policy or Custom**

A local government entity may be held liable pursuant to 42 U.S.C. § 1983 where the alleged constitutional tort was inflicted in the execution of the entity's (1) policy or (2) custom. Monell v. Dept. of Social Services, 436 U.S. 658, 690-91 (1978).

A policy or custom need not be a formally promulgated for purposes of § 1983, rather the existence of a policy or custom may be inferred by the conduct. Henry v. County of Shasta, 132 F.3d 512, 519 (9th Cir. 1997). Additionally, existence of a policy or custom in a § 1983 municipal liability claim may be proven by prior conduct or post-event evidence. Larez v. Los Angeles, 946 F.2d 630 (9th Cir. 1991).

At paragraph 49 of his Complaint, Plaintiff specifically alleges that The unconstitutional actions and/or omissions of Defendant Perdue, as well as other officers employed by or acting on behalf of Defendant Henderson, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Henderson, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for Henderson: To arrest and or detain individuals for traffic violations by handcuffing citizens and the use of pain compliance techniques on traffic stops; To fail to use appropriate and generally accepted law enforcement procedures by undercover officers; To fail to use appropriate and generally accepted law enforcement procedures in requiring use of force reports to be used where an injury occurs; To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and, To tolerate poorly performing officers and failing to adequately discipline those officers for misconduct; To cover-up violations of constitutional rights by any or all of the following: (i) by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, and unlawful seizures and arrests, and/or handling of injured citizens; (ii) by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity by refusing to conduct a full internal affairs complaint against the Defendant officer; and by failing to advise citizens of the violation and findings and disciplines; (iii) by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information. (Doc. 28 ¶ 49).

Plaintiff further alleged that Henderson participated in the coverup of the false arrest and false imprisonment of, and use of excessive force upon, Plaintiff.  Moreover, Henderson maintained *de facto* policies, and organizational customs and cultures to handcuff and use painful holds on citizens in traffic stops and to give "street justice" to individuals whom Henderson officers believed had disrespected their authority.  Henderson has also refused to identify Doe

13

Officers and to further conduct its investigation in a transparent matter. Defendant Henderson's *de facto* policies, and organizational customs and cultures were the proximate cause behind the conduct causing Plaintiff to suffer the constitutional violations. (Doc. 28 ¶ 50).

Accepting all of the allegations concerning the foregoing policies, practices, and customs, Plaintiff has stated a "plausible" <u>Monell</u> claim because the foregoing allegations demonstrate Henderson's *de facto* policies and an organizational custom and culture whereby the Henderson Police Department was deliberately indifferent to the constitutional rights of citizens. Consequently, Defendants Motion should be denied.

### 2.    Ratification

A single decision by a municipal official that ratifies unconstitutional conduct may be sufficient to trigger section 1983 liability if that official has "final policymaking authority." <u>Pembaur</u>, 475 U.S. at 481-83; <u>Gillette</u>, 979 F.2d at 1347.

The Ninth Circuit distinguishes between affirmative or deliberate conduct by a policymaker, which constitutes ratification, and mere acquiescence, which is insufficient to establish municipal liability by ratification. *See* <u>Gillette</u> *supra*.  In <u>Fuller v. City of Oakland</u>, 47 F.3d 1522, 1534 (9th Cir. 1995), the court found section 1983 municipal liability where a police chief ratified an unconstitutional investigation by expressly "approv[ing] both of the propriety of the investigation and the reports conclusions." *See*, <u>Christie</u>, 176 F.3d at 1240 (finding municipal liability via ratification where prosecutor "affirmatively approved" of alleged constitutional violations).

In this case Plaintiff specifically alleged that the unconstitutional actions and/or omissions of Defendant Perdue were approved, tolerated and/or ratified by policy-making officer Defendant Moers for Henderson.  Plaintiff is informed and believes, and thereupon alleges, the details of this incident has been revealed to Defendant Moers, and that such policy maker has direct knowledge of the fact that the injury and false imprisonment of Plaintiff was not justified, but rather represented an unconstitutional display of unreasonable and excessive force.  Notwithstanding this knowledge, Defendant Moers has approved Defendant Perdue's actions, and has made a deliberate choice to endorse Defendant Perdue's misconduct. By so doing, Defendant Moers has shown

1   affirmative agreement with the individual defendant officers' actions, and has ratified the

2   unconstitutional acts of the individual Defendant officer. (Doc. 28 ¶ 53).

3       Moers' ratification of Defendant Perdue's unconstitutional actions demonstrates that

4   Defendant Perdue's conduct was not inconsistent with the City's actual customs, even when that

5   conduct may have departed from published policies. Consequently, Defendant's Motion should

6   be denied.

7   **F.    DEFENDANTS MOERS AND PERDUE ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

8       Qualified Immunity is an affirmative defense, therefore the Defendant's bear the burden of

9   proof. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001).  In evaluating the issue of qualified immunity, the

10  court follows a two-part test: (1) whether the facts alleged "show [that] the officer[s'] conduct

11  violated a constitutional right"; and (2) whether the constitutional right in question was "clearly

12  established" such that "it would be clear to a reasonable officer that his conduct was unlawful in

13  the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001); *See also* modifications

14  to <u>Saucier</u> following <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009).

15      The test for qualified immunity is objective. The defendant's actual purpose or state of mind

16  is not material. Whether rights were "clearly established" at the relevant time is determined in most

17  instances by looking at controlling published court decisions as of that time. <u>United States v.

18  Lanier</u>, 520 U.S.259, 269-71 (1997). It is not necessary, however, for the plaintiff to show a

19  published decision establishing the rights in question under precisely the same circumstances as

20  those presented in the case in question.  See, <u>Anderson v. Romero</u>, 72 F.3d 518, 526-27 (7th

21  Cir.1995);  <u>Buonocore v. Harris</u>, 65 F.3d 347, 356-57 (4th Cir.1995). To rule that until the

22  Supreme Court has spoken, no right of litigants in this circuit can be deemed established before

23  we have decided the issue would discourage anyone from being the first to bring a damages suit

24  in this court; he would be certain to be unable to obtain any damages. <u>Burgess v. Lowery</u>, 201 F.3d

25  942 (7th Cir. 2000).

26      Officers have no "discretion" to violate the Constitutional rights of citizens. <u>Owen v. City

27  of Independence, Mo.</u>, 445 U.S. 622 (1980). A Defendant is only entitled to qualified immunity

28  if the Defendant did not violate "clearly established rights" at the time of the conduct in question.

1   Harlow v. Fitzgerald, 457 U.S. 800, 817-818(1982). *See*, Mattos v. Agarano, 661 F.3d 433 (9th

2   Cir. 2011)(holding that the law must be well settled).

3        Additionally, the prohibition against acquiescence in the constitutional deprivations and

4   conduct that showed a reckless or callous indifference to the rights of others was clearly

5   established at the time of the incident giving rise to this Complaint. Larez v. Los Angeles, 946 F.2d

6   630, 646 (9th Cir. 1991). Because there existed published opinions prohibiting acquiescence in the

7   constitutional deprivations and conduct that showed a reckless or callous indifference to the rights

8   of others before the incident giving rise to this Complaint, any reasonable Chief would have been

9   aware that choosing not to prohibit officers from violating citizen's Fourth Amendment rights,

10  failing to discipline and terminate Officers for physical violence against citizens. (Doc. 28 ¶ 42);

11  and maintaining de facto policies to detain and handcuff citizens as a form of intimidation and in

12  violation of well-settled law by the Ninth Circuit Court of Appeals (Doc. 28 ¶ 30) was unlawful.

13  Consequently, Defendant Moers is not entitled to qualified immunity because his decisions to not

14  to prohibit officers from violating citizen's Fourth Amendment rights; failing to discipline and

15  terminate Officers for physical violence against citizens; and maintaining de facto policies to

16  detain and handcuff citizens as a form of intimidation demonstrates acquiescence in the

17  constitutional deprivations and conduct that showed a reckless or callous indifference to the rights

18  of others. Consequently Moers in not entitled to qualified immunity.

19       Similarly, it was also well-settled at the time of this event that Officers who idly standby

20  and fail to prevent  fellow officers from using excessive force are also liable to the plaintiff. U.S.

21  v. Koon, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994)(judgment aff'd in part, rev'd in part on other

22  grounds, 518 U.S 81, 116 S.Ct. 2038 (1996).  Likewise, arrests without probable cause were

23  prohibited at the time of this incident. Morgan v. Woessner, 997 F.2d 1244 (9th Cir. 1993).

24  Consequently, Defendant Perdue is not entitled to qualified immunity because accepting Plaintiff's

25  allegations as true, Perdue's unconstitutional conduct violated clearly established law.

26  **G.**   **PLAINTIFF HAS ALLEGED A VIABLE CLAIM FOR FALSE IMPRISONMENT**

27       *Respondeat superior* is a viable theory of liability against Henderson and Chief Moers for

28  state torts.  *See,* Prell Hotel Corp. v. Antonacci, 86 Nev. 390 (1970) and N.R.S. 41.130. False

imprisonment is the confinement or detention of another person without sufficient legal authority. NRS 200.460. An individual is liable for the tort of false imprisonment if: (1) he or she act intending to confine the other or a third person within boundaries fixed by the actor; (2) his or her acts directly or indirectly results in such a confinement of the other; and (3) the other is conscious of the confinement or is harmed by it. Switzer v. Rivera, 174 F. Supp. 2d 1097, 1110 (D. Nev. 2001).  In order to prove false arrest in a false imprisonment action, plaintiff must show that the defendant instigated or effected an unlawful arrest. Nau v. Sellman, 104 Nev. 248, 757 P.2d 358 (1988).

In Nevada, the tort of false arrest is closely related of the common law tort of false imprisonment. Nau v. Sellman, 104 Nev. 248 (1988); *See also* Nelson v. City of Las Vegas, 99 Nev. 548 (1983)(Analyzing false arrest and false imprisonment holding " A police officer is not liable for false arrest or imprisonment when he acts pursuant to a warrant that is valid on its face. The facially valid warrant provides the legal cause or justification for the arrest, in the same way that an arrest made with probable cause is privileged and not actionable."). Moreover, Nevada's pattern jury instruction for false imprisonment, 6 IT 4, provides that "False imprisonment arising from false arrest occurs when the claimant's liberty is restrained under the probable imminence of force without any legal cause or justification" Id. *See also* Jordan v. State ex. rel. Dept. of Motor Vehicles, 121 Nev. 44 (2005)(holding a false-arrest claimant must show that the actor instigated or effected an unlawful arrest. Similarly, false imprisonment arising from a false arrest occurs when the claimant's liberty is restrained under the probable imminence of force without any legal cause or justification.) *overruled concerning standard of review for a Motion to Dismiss only*.

Here, Plaintiff alleged that Despite the Plaintiff not having committed any crime, Defendant Perdue then slapped his badge shield against the passenger window identifying himself as a police officer.  Both Defendant Nielson and Defendant Perdue were in plain clothes and not acting as traffic officers.  Defendant Perdue then yelled profanity words to the effect that "we're not fucking playing games." Defendant Perdue  continued his profanity by telling Mr. Harris that he was going to fucking jail.  Mr. Harris advised both officers the he was not resisting and attempted to state that he did not know they were police officers when they got out of their car.  (Doc. 28 ¶ 23).

17

Moreover, Plaintiff alleged that Defendant Perdue's conduct of detaining and arresting Plaintiff without legal probable cause constitutes false arrest and false imprisonment.(Doc. 28 ¶ 58). As a direct and proximate result of Defendant Perdue's conduct, Plaintiff has incurred special and general damages. (Doc. 28 ¶ 59). Defendant Perdue's conduct was committed intentionally, maliciously, and with conscious disregard to the safety of Plaintiff warranting the imposition of punitive damages.(Doc. 28 ¶ 60). Accepting Plaintiff's allegations as true (1) Defendants intended to confine Mr. Harris during the course of his detention and arrest when they physically stopped Mr. Harris' vehicle and prevented him from leaving; (2) Defendants' actions directly caused the confinement; and (3) Mr. Harris was aware that he was being confined and was not free to leave. Consequently, Henderson's Motion should be denied.

**H.    PLAINTIFF HAS ALLEGED A VIABLE CLAIM FOR IIED**

*Respondeat superior* is a viable theory of liability against Henderson and Chief Moers for state torts.  *See,* Prell Hotel Corp. v. Antonacci, 86 Nev. 390 (1970) and N.R.S. 41.130. The elements of an intentional infliction of emotional distress ("IIED") claim are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." Star v. Rabello, 97 Nev. 124, 625 P.2d 90, 91-92 (Nev. 1981)

Here, Defendant Perdue's use of force by handcuffing and false imprisonment of Plaintiff was extreme and outrageous causing Plaintiff to suffer emotional distress and was done intentionally and maliciously. (Doc. 28 ¶ 63). As a direct and proximate result of Defendant Perdue's intentional infliction of emotional distress upon Plaintiff, he has incurred special and general damages, and is further entitled to punitive damages.(Doc. 28 ¶ 64). As a direct result of the acts and omissions of the Defendants, and each of them, Plaintiff was caused to suffer physical and mental injury, pain and suffering, and severe emotional distress and other related costs, medical, and lost wages, including but not limited to attorney fees. (Doc. 28 ¶ 65).

Accepting Plaintiff's allegations as true, it is apparent that Plaintiff has alleged specific facts which demonstrate that the Defendants engaged in outrageous conduct which caused Plaintiff to suffer severe emotional distress. Consequently, Henderson's Motion should be denied.

**I.     PLAINTIFF HAS ALLEGED A VIABLE CLAIM FOR NEGLIGENCE**

Plaintiff has alleged specific facts, in paragraphs 70 through 72, against Defendant Moers. Moreover, *respondeat superior* is a viable theory of liability against Henderson and Chief Moers for state torts. *See,* Prell Hotel Corp. v. Antonacci, 86 Nev. 390 (1970) and N.R.S. 41.130. In order to prevail on a negligence theory a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages. DeBoer v. Sr. Bridges of Sparks Fam. Hosp., 282p.3d727, 732 (2012).

Here Plaintiff has alleged that each Defendant owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.  (Doc. 28 ¶67). At all times, each Defendant owed Plaintiff the duty to act with reasonable care. (Doc. 28 ¶ 68).

The general duties of reasonable care and due care owed to Plaintiff by all Defendants include but are not limited to the following specific obligations:

      a.     to refrain from using excessive and/or unreasonable force against Plaintiff;

      b.     to refrain from unreasonably creating the situation where force is used;

      c.     to refrain from abusing the authority granted to them by law;

      d.     to refrain from violating Plaintiff's rights guaranteed by the United States and Nevada Constitutions, as set forth above, and as otherwise protected by law. (Doc. 28 ¶ 69).

Additionally, these general duties of reasonable care and due care owed to Plaintiff by Defendants Henderson, Chief Moers and Does III-X, include but are not limited to the following specific obligations:

      a.     to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline, their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

. . .

19

1             b.     to make, enforce, and at all times act in conformance with policies and

2                     customs that are lawful and protective of individual rights, including

3                     Plaintiff's;

4             c.     to refrain from making, enforcing, and/or tolerating the wrongful

5                     policies and customs set forth above.(Doc. 28 ¶ 70).

6       Defendants, through their acts and omissions, breached each and every one of the

7 aforementioned duties owed to Plaintiff. (Doc. 28 ¶ 71). As a direct and proximate result of

8 Defendants' negligence, Plaintiff sustained injuries and damages, and against each and every

9 Defendant. (Doc. 28 ¶ 72). Accepting Plaintiff's allegations as true, it is apparent that Plaintiff

10 has alleged specific facts against Chief Moers which demonstrate that the Defendant Moers

11 breached duties of care which he owed Plaintiff, thereby causing Plaintiff damages.

12 Consequently, Defendant's Motion should be denied.

13 **J.**     **THIS COURT HAS JURISDICTION OVER PLAINTIFF'S STATE TORT CLAIMS**

14       It is within the discretion of the federal district court to hear pendant state tort claims

15 that arise out of a "common nucleus of operative fact". <u>United Mine Workers of America v.</u>

16 <u>Gibbs</u>, 383 U.S. 715, 726 (1966). To return the state tort claims to state court would be a waste

17 of judicial resources. <u>Schneider v. TRW, Inc.</u>, 938 F.2d 986, 994 (9th Cir. 1991).

18       In this case, Plaintiff specifically invoked the supplemental jurisdiction of this Court

19 pursuant to 28 U.S.C. § 1367 (Doc. 1, ¶ 3). § 1367(c) generally provides the circumstances in

20 which a Court may decline to exercise supplemental jurisdiction. Those instances include when

21 (1) the claim raises a novel or complex issue of State law, (2) the claim substantially

22 predominates over the claim or claims over which the district court has original jurisdiction, (3)

23 the district court has dismissed all claims over which it has original jurisdiction, or (4) in

24 exceptional circumstances, there are other compelling reasons for declining jurisdiction.

25       In the case at hand, the central tenet of Plaintiff's Complaint is excessive use of force

26 and unlawful arrest in violation of the Fourth Amendment. Arising out of that same unlawful

27 arrest are state tort claims for and False Imprisonment, Intentional Infliction of Emotional

28 Distress and Negligence. Therefore the state tort claims arise of the same nucleus of operative

fact. Additionally, none of the circumstances in which a Court may, generally, decline to exercise supplemental jurisdiction exist in this matter because claims for false arrest/false imprisonment are well-settled in Nevada and do not involve novel or complex issue of State law; Plaintiff's state claims do not substantially predominate over his § 1983 claims; the Plaintiff has viable claims under § 1983, and there do not exist, nor has Defendant alleged, that there exist any exceptional circumstances or compelling reasons to decline jurisdiction.

On the contrary, the basis for Defendants argument concerning lack of supplemental jurisdiction is premised upon the Court's dismissal of Plaintiff's claims under § 1983. As analyzed above, Plaintiff submits that he has viable claims under § 1983. Therefore, Plaintiff respectfully requests that this Court exercise its supplemental jurisdiction over Plaintiff's state tort claims.

**K.    PLAINTIFF ONLY SEEKS PUNITIVE DAMAGES AGAINST INDIVIDUAL DEFENDANTS**

In the interest of clarity, Plaintiff does not seek punitive damages from the City of Henderson but rather only seeks punitive damages against the individual Defendants as noted in Plaintiff's second prayer for relief. ("In excess of $75,000.00 in exemplary damages as to individual Defendant's")(Doc. 1, p. 14).

**L.    PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT IS APPROPRIATE**

The Federal Declaratory Judgment Act provides: In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relation of any interested party seeking such declaration, whether or not further relief is or could be sought. Any Such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.  U.S.C.A. §§ 2201, 2202

A declaratory judgment rules upon the lawfulness of a particular statute, policy, or government practice and, unlike an injunction, does not involve continuing oversight or affirmative intervention by the court.  *See e. g.* Steffel v. Thompson, 415 U.S. 452 (1974). Because of the lesser degree of intrusiveness into governmental affairs, the Supreme Court has held that a grant of declaratory relief does not require a showing of irreparable injury Steffel, at

466-67. Declaratory relief is appropriate where such relief may vindicate the plaintiff's position, clarify or settle legal issues, or forestall future litigation. <u>Greater Los Angeles Council on Deafness, Inc. v. Zolin</u>, 812 F.2d 1103, 1111-13 (9th Cir. 1987).

Here, Plaintiff's Complaint provides that: this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, for a finding that Defendant Henderson has chosen not to comply with Plaintiff's FOIA requests and providing injunctive relief requiring Defendant Henderson to comply with Plaintiff's FOIA requests because Plaintiff has an inadequate remedy at law in that he is precluded from identifying the individuals whom violated his civil rights while acting under the color of law as alleged herein. (Doc. 28 ¶ 19). Following this incident, Plaintiff made FOIA requests upon Defendant Henderson, however each department chose not to comply with the requests and affirmatively concealed their misconduct.   (Doc. 28 ¶ 27).

In this case, Henderson is subject to Nevada's State Freedom of Information Act which is promulgated as Nevada's Open Records law, NRS § 239. Consequently, Henderson is subject to the state statute and this Court may properly require Henderson to comply with the statute.

**M.     IN THE ALTERNATIVE TO DISMISSAL, PLAINTIFFS OUGHT TO BE PERMITTED TO AMEND THE COMPLAINT TO CLARIFY ANY DEFICIENCIES**

Federal Rules of Civil procedure, Rule 15(a) and 15(c) provides as follows:

> (a)     Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon trial calendar, he may so amend it at any time within 20 days after it is served.  Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.  A party shall plead in response to an amended pleading within the time remaining for the response to the original pleading or within 10 days after service of the amended pleading whichever period may be the longer, unless the court otherwise orders.

> (c)  Relation back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

22

1      FRCP 15(a) provides in part that a party may amend their pleadings by leave of court

2  and leave shall be freely given when justice so requires. Although leave to amend a complaint

3  is not to be granted automatically, the policy permitting leave to amend is applied with

4  "extraordinary liberality." <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2s 1074, 1079

5  (9th Cir. 1990). Therefore, to the extent that this Court determines any deficiencies exist in

6  Plaintiff's Complaint, Plaintiff respectfully requests the opportunity to cure any deficiencies

7  through amendment.

8  . . .

9

10

11

12  . . .

13

14

15

16  . . .

17

18

19

20  . . .

21

22

23

24  . . .

25

26

27

28  . . .

1

### III.

2

### CONCLUSION

3      Plaintiff respectfully requests that this Honorable Court deny Henderson's Motion

4  because when the allegations contained in Plaintiff's Complaint are accepted as true, as

5  required at the pleading stage, Plaintiff alleges plausible claims against Defendants Moers,

6  Perdue and Henderson. Moreover, Defendants are not entitled to qualified immunity because

7  they committed constitutional violations contrary to clearly established law. Lastly, Plaintiff

8  has alleged viable state tort claims that arise out of a common nucleus of operative fact as his

9  federal claims.

10      To the extent that this Court determines that any deficiencies exist in Plaintiff's

11 Complaint, Plaintiff respectfully requests the opportunity to cure any deficiencies through

12 amendment.

13      DATED this 28th day of September, 2015

14                                                       POTTER LAW OFFICES
                                                         YAN KENYON
15
                                                         By:  /s/ C. J. Potter, IV, Esq.
16                                                       CAL J. POTTER, III, ESQ.
                                                         Nevada Bar No.  1988
17                                                       C. J. POTTER, IV, ESQ.
                                                         Nevada Bar No. 13225
18                                                       POTTER LAW OFFICES
                                                         1125 Shadow Lane
19                                                       Las Vegas, Nevada   89102

20                                                       JAY A. KENYON, ESQ.
                                                         Nevada Bar No. 006376
21                                                       YAN KENYON
                                                         7881 West Charleston Boulevard #165
22                                                        Las Vegas, Nevada 89117
                                                         *Attorneys for Plaintiff*

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of POTTER LAW OFFICES, and that, on the 28th day of September, 2015, I filed and served through the CM/ECF electronic filing service a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO HENDERSON DEFENDANTS' MOTION TO DISMISS** as follows:

Nancy Savage, Esq.
CITY OF HENDERSON
240 Water Street
Henderson, NV 89015
Ph:   (702) 267-1200
Fax: (702) 267-1201
*Attorney for Henderson Defendants*

Lyssa S. Anderson, Esq.
KAEMPFER CROWELL RENSHAW GRONAUER & FIORENTINO
1980 Festival Plaza Drive, Suite 650
Las Vegas, NV 89135
Tel:  (702) 792-7000
Fax: (702) 796-7181
*Attorney for LVMPD Defendants*

    /s/ Jenna Enrico
An Employee of Potter Law Offices