# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HARVESTER HARRIS, <br><br>　　　　　Plaintiff, <br>　　vs. <br><br>CITY OF HENDERSON, a political subdivision of the State of Nevada; LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; SHERIFF DOUG GILLESPIE, individually; CHIEF PATRICK MOERS, individually; OFFICER SCOTT NIELSON, P#4408, individually; DETECTIVE PERDUE, individually; DOE OFFICERS III-X; and JOHN DOES I-X, inclusive, <br><br>　　　　　Defendants. | Case No.: 2:15-cv-0337-GMN-PAL <br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 108), filed by Defendant Las Vegas Metropolitan Police Department ("LVMPD"). Also pending before the Court is the Motion for Summary Judgment, (ECF No. 109), filed by Defendant Scott Neilson ("Officer Neilson"). Plaintiff Harvester Harris ("Plaintiff") filed a single Response, (ECF No. 111), to both Motions, and LVMPD and Officer Neilson (collectively "Defendants") filed a single Reply, (ECF No. 115).

## I. <u>BACKGROUND</u>

This case arises out of a traffic stop involving Plaintiff and Defendants Officer Scott Nielson ("Officer Nielson") and Detective Perdue (collectively the "Officers"). Specifically, Plaintiff was working as a taxicab driver on March 8, 2013, in Las Vegas, Nevada, and he was driving south on the Interstate 15 ("I-15") while on his way to answer a radio call. (*See* Taxicab

Video, Ex. 1 to Resp., ECF No. 111-1). Officer Nielson and Detective Perdue were also on the I-15 at this time while on duty for the FBI's Joint Terrorism Task Force. (Perdue Depo. at 6, Ex. 2 to Resp., ECF No. 111-2). Pursuant to these duties, Officer Nielson was the driver, Detective Perdue was the passenger, and both Officers were driving in plain clothes and in an unmarked vehicle. (Perdue Depo. at 7).

While on the I-15, Officer Nielson alleges that Plaintiff was speeding and changing lanes rapidly. (Nielson Depo. at 9, Ex. F to LVMPD MSJ, ECF No. 108-2). After a few miles, Plaintiff began to exit the freeway, and the Officers followed him. (*Id.* at 10–12). While stopped at the red light on the freeway off-ramp, Officer Nielson got out of the car, approached Plaintiff's taxicab, and tapped on Plaintiff's window. (Pl. Depo. at 21, Ex. A to LVMPD MSJ, ECF No. 108-1). Plaintiff rolled down his window, and Officer Nielson did not show a badge or announce that he was an officer. (*Id.*). Instead, Officer Nielson began speaking with Plaintiff about his driving. (*Id.*). Plaintiff only discovered he was an officer by asking him if he was off duty, to which Officer Nielson said, "No, I'm on duty." (*Id.*); (Tr. of Recording 2:54, Ex. G to LVMPD MSJ, ECF No. 108-2).

Officer Nielson then continued to engage Plaintiff in a verbal confrontation concerning Plaintiff's driving, and midway through the conversation, Officer Nielson asked for Plaintiff's license. (Tr. of Recording 3:111). Plaintiff answered, "I'm at work. I'm at work, man," and did not provide his license. (*Id.* 3:113). Officer Nielson asked for Plaintiff's license four more times, to which Plaintiff either stated that he was at work, or replied with "What did I do?" (*Id.* 3:123-128).

Hearing the commotion, Detective Perdue stepped out of the Officers' car, approached the passenger's side of the taxicab, hit the window with his badge, and shouted, "You think we are not f***ing playing games?" (*Id.* 3:135); (*see* Taxicab Video). While Detective Perdue was yelling at Plaintiff, Officer Nielson told Plaintiff multiple times to get out of the car, and

Detective Perdue also told Plaintiff to step out of the car. (Tr. of Recording 4:137-152). Plaintiff unbuckled and turned to get out of the car, and Plaintiff states that while trying to get out, Detective Perdue reached into the car, pulled Plaintiff out of his vehicle, and escorted him to the back of the taxicab and the front of the Officers' car. (Pl. Depo. at 22).

While at the back of the taxicab, Plaintiff asserts that Officer Nielson slammed Plaintiff on the roof of the Officers' car, Officer Nielson grabbed Plaintiff's fingers, and then he twisted Plaintiff's fingers and placed Plaintiff in handcuffs. (*Id.* at 23). Plaintiff argues that Officer Nielson injured his finger during this encounter. (*Id.* at 23-25). After further discussion between Plaintiff and Officer Nielson, Officer Nielson ultimately released Plaintiff without issuing a citation. (Nielson Depo. at 19).

Plaintiff filed the instant action on February 25, 2015. (*See* Compl., ECF No. 1). On July 31, 2015, the parties filed a Stipulation to Amend Complaint, (ECF No. 25), and on August 10, 2015, Plaintiff filed his First Amended Complaint ("FAC"), (ECF No. 28). On June 20, 2016, Plaintiff's FAC was dismissed without prejudice, and Plaintiff was granted leave to file a second amended complaint, which was filed on July 5, 2016. (Dismissal Order, ECF No. 50); (Sec. Am. Compl., ECF No. 53).

On January 27, 2017, the Court granted Motions to Dismiss that terminated Defendants Doug Gillespie and Chief Patrick Moers, (*see* Order, ECF No. 78). The Order also granted Plaintiff leave to amend and file a third amended complaint "to cure the jurisdictional deficiencies identified in this Order for [Plaintiff's] fourth, fifth, and sixth causes of action regarding his state law claims against Detective Perdue." (Order 10:8–9).

Plaintiff filed his Third Amended Complaint ("TAC") on February 17, 2017. (TAC, ECF No. 82). The TAC alleges the following causes of action: (1) 42 U.S.C. § 1983 violations against Officer Nielson; (2) *Monell* claims against Defendant Las Vegas Metropolitan Police Department ("LVMPD"); (3) false arrest and false imprisonment against Henderson, Detective

Perdue, and Officer Nielson; (4) intentional infliction of emotional distress against Henderson, Detective Perdue, and Officer Nielson; and (5) negligence against Henderson, Detective Perdue, and Officer Nielson (TAC ¶¶ 108–62).

On October 10, 2017, the Court granted Defendants' Motion to Dismiss, (ECF No. 85), and dismissed Defendants City of Henderson and Detective Perdue, (ECF No. 92). On January 25, 2018, remaining Defendants LVMPD and Officer Nielson filed their Motions for Summary Judgment, (ECF Nos. 108, 109).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

The Court will first address LVMPD's Motion for Summary Judgment regarding its remaining *Monell* claim, and then it will turn to Officer Nielson's Motion for Summary Judgment.

### A. LVMPD

In the TAC, Plaintiff asserts that the "unconstitutional actions and/or omissions of Defendants Officer Neilson and Detective Perdue, as well as other officers employed by or acting on behalf of . . . LVMPD" were pursuant to customs, policies, practices, and procedures of LVMPD. (TAC ¶ 123, ECF No. 82). Plaintiff argues that these customs and policies include, *inter alia*, "[t]o arrest and or detain individuals for traffic violations by handcuffing citizens and the use of pain compliance techniques on traffic stops and idly standing by and allowing fellow officers to commit excessive force," and "[t]o fail to use appropriate and generally accepted law enforcement procedures in requiring use of force reports to be used where an injury occurs." (*Id.*).

LVMPD seeks summary judgment on Plaintiff's *Monell* cause of action because Plaintiff "has provided no evidence of an unconstitutional policy or custom which caused him injury." (LVMPD Mot. for Summ. J. ("MSJ") 3:16–17; 17:20–21, ECF No. 108). Under *Monell* and its progeny, a plaintiff may hold a municipality liable under § 1983 if his injury was inflicted pursuant to city policy, regulation, custom, or usage. *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91, 694 (1978)). In order to find liability, four conditions must be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

"Proof of random acts or isolated events" does not fit within *Monell*'s meaning of custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds*, *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). Indeed, "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Id.* (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970))).

In the Ninth Circuit, it is well settled that a plaintiff generally cannot establish a de facto policy with a single constitutional violation. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Instead, a plaintiff's theory must be founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d 1135 (9th Cir. 2000).

Here, LVMPD argues that Plaintiff "has not identified a specific policy which allegedly resulted in his injuries." (LVMPD MSJ 18:18). Moreover, LVMPD states that Plaintiff asserts no evidence of a custom, as Plaintiff's "only evidence of an LVMPD custom that leads to unconstitutional actions is predicated on this one isolated incident." (*Id.* 19:5–6).

In response, Plaintiff argues that "there exists several other incidents that demonstrate the existence on [sic] LVMPD's de facto policies of dispensing street justice to citizens whom the departments' officers believed were being disrespectful or not listening to commands, like [Officer Nielson] believed [Plaintiff] had done." (Resp. 20:15–20). Plaintiff then cites three cases from 2008 and 2009 where he alleges the LVMPD dispensed "street justice" to citizens "who officers believe had committed the fictitious crime of 'contempt of cop.'" (*Id.* 21:1–23:9).

In the Reply, LVMPD states that "the allegations in the cases do not provide any evidence that an LVMPD custom was the proximate cause for [Officer] Nielson's actions."

(Reply 4:12–13, ECF No. 115).  LVMPD continues that Plaintiff "has not shown—much less alleged—how the officers in each of the cases acted according to a widespread custom." (*Id.* 4:13–14).

The Court agrees.  Plaintiff fails to provide sufficient evidence to support the allegation that LVMPD has a de facto policy or custom of dispensing "street justice" to citizens. (*See* Resp. 20:15–20).  Although Plaintiff points to three prior cases to support his argument, Plaintiff fails to connect the incidents to a supposed policy or custom of the LVMPD, rather than the incidents being a result of officers acting pursuant to their own motivations and judgment. *See Thompson*, 885 F.2d at 1443.  Moreover, the incidents Plaintiff cites to do not show a frequency or consistency that would constitute the conduct becoming "a traditional method of carrying out policy." *See Trevino*, 99 F.3d at 918.  Because Plaintiff has failed to present evidence creating a triable issue of fact regarding liability under § 1983 for LVMPD, LVMPD's Motion for Summary Judgment is granted.

### B. Officer Nielson

Plaintiff asserts in his TAC that Officer Nielson violated his Fourth Amendment rights because the "searching of the Plaintiff, the handcuffing of the Plaintiff, and pulling the Plaintiff's finger down was unnecessary, unreasonable, excessive force" and that the Officers "overreacted to this supposed minor traffic infraction." (TAC ¶ 110).  Plaintiff additionally asserts that the "officers had no other reasonable suspicion nor probable cause to believe that the Plaintiff had committed a crime, was committing a crime, or was going to commit a crime. (*Id.* ¶ 12).  Officer Nielson asserts that he had "probable cause to arrest [Plaintiff] for reckless driving" and that he "had a right to handcuff [Plaintiff] for several reasons." (Nielson MSJ 4:17, 7:6–7).  The Court will first address the probable cause allegations, turn to the excessive force analysis, and then address Plaintiff's state law claims.

### *1. Probable Cause*

An arrest occurs if "under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning." *United States v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004) (quoting *United States v. Bravo*, 295 F.3d 1002, 1011 n. 8 (9th Cir. 2002)). "Unsurprisingly, it is clearly established that an arrest without probable cause violates a person's Fourth Amendment rights." *Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997) (citing *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 706 (9th Cir. 1989)). "Probable cause exists when the police know 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.'" *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990) (quoting *United States v. Delgadillo–Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1988)). Moreover, the Supreme Court recently held that probable cause is "not a high bar" and depends on the "totality of the circumstances." *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). When the underlying facts claimed to support probable cause are not in dispute, whether those facts constitute probable cause is an issue of law. *See Ornelas v. United States*, 517 U.S. 690, 696–97 (1996) (holding that the inquiry is whether the rule of law as applied to the established facts is or is not violated).

"In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." *Pierce v. Multnomah County*, 76 F.3d 1032, 1038 (9th Cir. 1996) (internal quotations omitted). In Nevada, officers have the authority to arrest individuals for reckless driving pursuant to Nevada Revised Statute ("NRS") § 484B.653(1)(a). *See Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (holding that an officer can have probable cause for any criminal offense, regardless of the stated reason for the arrest). The statute prohibits a person

from driving "a vehicle in willful or wanton disregard of the safety of persons or property." NRS § 484B.653(1)(a).

Here, no reasonable jury could find that probable cause did not exist for the traffic stop. *See McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) (holding that "summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest"). In his deposition, Plaintiff agrees that he was driving on the I-15 and exited the freeway at a speed of at least seventy miles an hour. (Pl.'s Depo. at 21, Ex. A to LVMPD's MSJ, ECF No. 108-1).[1] Moreover, Plaintiff admits that he was passing almost all the cars on the road. (*Id.*).

Due to Plaintiff corroborating that he was weaving in and out of traffic, and that he was going above the speed limit, these facts are undisputed causing the probable cause analysis to become a question of law. *See Ornelas*, 517 U.S. at 696–97. Under Nevada law, Plaintiff committed traffic violations. *See* NRS § 484B.653(1)(a). Moreover, Plaintiff did not provide his license when Officer Nielson requested it while Plaintiff was in the car, thereby violating NRS § 483.350.[2] (Pl.'s Depo. at 22, Ex. A to LVMPD's MSJ). In viewing the totality of the circumstances, Plaintiff admits to some of the traffic violations, and Plaintiff did not immediately hand over his license. *See Wesby*, 138 S. Ct. at 586. Because probable cause is "not a high bar," the Court determines that Officer Nielson had probable cause to arrest Plaintiff. *Id.* Accordingly, the Court grants summary judgment for Officer Nielson on the probable cause allegations.

---

[1] Although Defendants argue that the "cab video footage corroborates this testimony and indicates that he was in fact driving closer to 80 mph on I-15," (Nielson's MSJ 4:21–22), the cab video does not, in fact, have any indication as to speed in it. (*See* Taxicab Video, Ex. 1 to Resp., ECF No. 111-1).

[2] "Every licensee shall have his or her driver's license in his or her immediate possession at all times when driving a motor vehicle and shall manually surrender the license for examination, upon demand, to a justice of the peace, a peace officer, or a deputy of the Department." NRS § 483.350.

### *2. Excessive Force*

"In evaluating a Fourth Amendment Claim of excessive force, courts ask whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Glenn v. Wash. Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Evaluating the objective reasonableness of the use of force in a given situation "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of all the relevant circumstances." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (quoting *Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 2005)).

In the Ninth Circuit, a court analyzes an excessive force claim in three stages: (1) by assessing the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted; (2) by evaluating the government's interests by assessing the severity of the crime, such as whether the suspect posed an immediate threat to the officers' or public's safety and whether the suspect was resisting arrest or attempting to escape; and (3) by balancing the gravity of the intrusion on the individual against the government's need for that intrusion. *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018); *Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010); *Graham*, 490 U.S. at 396–97.

Officer Nielson argues that he is entitled to summary judgment because he "had decided to arrest" Plaintiff, because of "the fact that they were all in the middle of a busy highway off-ramp with moving traffic on both sides of them," and because Plaintiff was allegedly "uncooperative and noncompliant," Plaintiff had "a CCW permit," and "it was possible that he

could have a weapon." (Nielson MSJ 6:7–19). Plaintiff argues that Officer Nielson "purportedly stopped [Plaintiff] because of his speed and improperly changing lanes without signaling," and therefore, "a reasonable juror could determine that there was no strong governmental interest in handcuffing [Plaintiff], let alone pulling and twisting his fingers." (Resp. 14:7–13).

In the first stage of excessive force analysis, the Court looks to the severity of the intrusion on Plaintiff's Fourth Amendment rights by evaluating the type and amount of force inflicted. *Thompson*, 885 F.3d at 586. Here, Officer Nielson was not in uniform and was in an unmarked car. (Perdue Depo. at 7). He tapped on Plaintiff's window without immediately identifying himself to Plaintiff and began chastising Plaintiff's driving. (Pl. Depo. at 21); (*see* Taxicab Video, Ex. 1 to Resp., ECF No. 111-1). Plaintiff attempted to understand the situation, had to ask if Officer Nielson was an officer, and continuously asked him what he did wrong. (*See* Taxicab Video). Instead of keeping a level head, both Officers shouted at Plaintiff and then pulled Plaintiff out of the car, placed Plaintiff's hands behind his back, and held so tightly onto Plaintiff's fingers that one of them was injured, before placing Plaintiff in handcuffs. (*Id.*); (Pl. Depo. at 22–23). While Officer Nielson argues that "he grabbed [Plaintiff's] fingers as part of the technique for handcuffing someone," (Nielson MSJ 8:2–6), the Court is unconvinced that handcuffing in this scenario, and the level of force used in the handcuffing, was reasonable.

In addressing the second stage, the Court must evaluate the government's interest in the use of force. *Thompson*, 885 F.3d at 586. *Graham* provides a non-exhaustive list of factors a court considers in assessing the governmental interests at stake in relation to a use of force, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "[T]he 'most important' *Graham* factor is whether the suspect posed an 'immediate threat to the safety of the officers or others.'" *Mattos*

*v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (quoting *Smith*, 394 F.3d at 702). When considering whether there was an "immediate threat," "a 'simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Id.* at 441–42 (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001)).

None of these factors are present here. Plaintiff's crime was a misdemeanor at best. *See* NRS § 484B.653(1)(a) (stating that "[a] person who violates paragraph (a) of subsection 1 is guilty of a misdemeanor"). Although Officer Nielson alleges that "Plaintiff had a CCW permit" and "it was possible that he could have a weapon," Officer Nielson provides no evidence corroborating that he possessed that knowledge at the scene of the incident, and the video of the scene validates this as this fact was never brought up, alluded to, or mentioned. (*See* Taxicab Video). Moreover, Officer Nielson fails to ever indicate that he feared for his safety. (*Id.*). Finally, Plaintiff did not resist arrest or attempt to evade arrest. *See, e.g.*, *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1165 (9th Cir. 2011) ("When, as here, a suspect's disobedience of a police officer takes the form of passive noncompliance that creates a minimal disturbance and indicates no threat, immediate or otherwise, to the officer or others, it will not, without more, give rise to a governmental interest in the use of significant force."). Accordingly, the Court cannot determine that the government had an interest in using force.

The final stage of analysis is balancing the gravity of the intrusion on the individual against the government's need for that intrusion. *Thompson*, 885 F.3d at 586. Because the Court cannot determine that the government had a need for the intrusion that occurred, a reasonable juror could find that the intrusion was unreasonable.

"If the evidence, reviewed in the light most favorable to [a plaintiff], could support a finding of excessive force, then the defendants are not entitled to summary judgment." *Smith*, 394 F.3d at 701. "'Because [the excessive force inquiry] nearly always requires a jury to sift

through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" *Id.* (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)); *see also Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). Accordingly, the Court denies summary judgment on Plaintiff's excessive force claim.

### 3. *Qualified Immunity*

Officer Nielson asserts that "even if this Court were to find a question of fact as to whether a constitutional right had been violated, [Officer] Nielson is entitled to qualified immunity." (Nielson MSJ 8:13–14). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232).

Here, as discussed *supra*, there are questions of fact as to whether Officer Nielson used unreasonable and therefore excessive force in violation of the Fourth Amendment when arresting Plaintiff. Plaintiff posed no apparent or immediate threat to the Officers as he sat in his car during the exchange. (*See* Taxicab Video). He did not verbally or physically threaten the Officers, and he did not attempt to restart or move his car. (*Id.*). Although Plaintiff did not immediately give the Officers his license, "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012). Accordingly, there are genuine issues of material fact as to whether Officer Nielson violated a constitutional right.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Clearly established law should not be defined at a "high level of generality." *Id.* at 742. This is particularly true in the context of the Fourth Amendment, where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal citation omitted).

Indeed, "[t]he principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well-established in 2001, years before the events at issue in this case." *Young*, 655 F.3d at 1168. Similarly, "[t]he right to be free from excessive force in handcuffing [was] clearly established in [Ninth Circuit] precedent" at least as early as

2003. *Luchtel v. Hagemann*, 623 F.3d 975, 989 (9th Cir. 2010) (citing *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (rejecting qualified immunity because it was "clearly established" that the amount of force used in handcuffing the plaintiff was excessive). In short, the relevant law related to the alleged uses of excessive force in this case was clearly established in March 2013. Thus, given the questions of fact as to the reasonableness of force, Officer Nielson is not entitled to qualified immunity based on the record now before the Court.

### 4. *False Arrest and Imprisonment*

False arrest and false imprisonment claims are evaluated under the reasonableness standard of the Fourth Amendment. *See Luchtel v. Hagemann*, 623 F.3d 975, 984 (9th Cir. 2010) (affirming summary judgment on false arrest claim because the police had probable cause); *see also United States v. Manzo–Jurado*, 457 F.3d 928, 934 (9th Cir. 2006) (holding that reasonable suspicion constitutes legal justification for the restraint). Therefore, probable cause is an absolute defense to false arrest and false imprisonment claims. *See Luchtel*, 623 F.3d at 984. As previously stated, the Court concludes that Officer Nielson had probable cause to stop and arrest Plaintiff for reckless driving. Accordingly, because the Court grants summary judgment on the probable cause claim, the Court grants summary judgment for Officer Nielson on Plaintiff's false arrest and imprisonment claims.

### 5. *Intentional Infliction of Emotional Distress ("IIED")*

In his TAC, Plaintiff alleges that he suffered an IIED claim because of the Officers' use of "excessive force deployed upon Plaintiff," and pursuant because "Detective Perdue yelled profanity words at Plaintiff. (TAC ¶ 149). To prevail on an intentional infliction of emotional distress claim, Plaintiff must establish that: (1) the defendant acted in an extreme and outrageous manner; (2) the defendant intended to or recklessly disregarded the probability that his conduct would cause the plaintiff emotional distress; (3) the plaintiff actually suffered extreme or severe emotional distress; and (4) the defendant's conduct caused the plaintiff's

distress. *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1201 (D. Nev. 2009); *see also Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).

"Extreme and outrageous conduct also may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1122 (D. Nev. 2009) (internal quotations omitted). "The court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury [must determine] whether the conduct was extreme and outrageous enough to result in liability." *Id.* at 1121.

Here, based on the survival of Plaintiff's excessive force claim, the Court cannot grant summary judgment on Plaintiff's IIED claim as "reasonable people may differ." *Id.* Because Plaintiff has proffered sufficient evidence to raise disputed issues of fact concerning the Officers' conduct, the Court denies summary judgment on this claim.

### *6. Negligence*

To prevail on a claim for negligence, a plaintiff must generally show that: "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996). Under Nevada law, the questions of proximate cause and reasonableness presented by a negligence claim usually advance questions of fact for the jury. *Frances v. Plaza Pacific Equities*, 847 P.2d 722, 724 (Nev. 1993).

Officer Nielson argues that he is entitled to summary judgment on this claim because Plaintiff's negligence allegations are "merely a grammatical reformulation of the intentional torts and constitutional violations he already alleged against Nielson." (Nielson MSJ 14:17–18). Plaintiff asserts that "a reasonable juror could conclude that [Officer Nielson] breached his

duties to refrain from using excessive or unreasonable force against [Plaintiff]; to refrain from unreasonably creating the situation where force is used; [and] to refrain from violating Plaintiff's rights guaranteed by the United States and Nevada constitutions." (*Id.* 26:16–21).

"Whether a defendant owes a plaintiff a duty of care is a question of law." *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996). Police officers owe a duty of care to the members of the general public. *Vasquez–Brenes v. Las Vegas Metro. Police Dep't*, 51 F.Supp.3d 999, 1014 (D. Nev. 2014). As explained previously, genuine issues of material fact remain regarding whether Officer Nielson adequately assessed the necessity to use the amount of force he ultimately used against Plaintiff. Accordingly, the Court denies Officer Nielson's Motion on the negligence claim.

### 7. *Discretionary Immunity*

Officer Nielson argues, however, that he is immune to Plaintiff's state law claims pursuant to Nevada's discretionary function immunity statute. (*See* Nielson MSJ 10:4–19); *see* NRS § 41.032. Specifically, Nevada has waived its general state immunity under NRS § 41.031. The state's waiver of immunity is not absolute; the state has retained a "discretionary function" form of immunity for officials exercising policy-related or discretionary acts. *See* NRS § 41.032.

In 2007, the Nevada Supreme Court adopted the United States Supreme Court's *Berkovitz-Gaubert* two-part test regarding discretionary immunity. *See Martinez v. Maruszczak*, 168 P.3d 720, 722, 728–29 (Nev. 2007). Under Nevada law, state actors are entitled to discretionary-function immunity under NRS § 41.032 if their decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Id.* at 729. "[F]ederal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in

social, economic, and political policy through the medium of an action in tort." *See id.* at 729 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984) (internal quotation marks omitted)).

Police officers "exercise[ ] discretion and [are] thus generally immune from suit where the act at issue require[s] 'personal deliberation, decision, and judgment,' rather than 'obedience to orders, or the performance of a duty in which the officer is left no choice of his own.'" *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014) (citing *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007)). In particular, "[a]n officer's decision as to how to accomplish a particular seizure or search is generally considered a discretionary determination under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases." *Davis*, 478 F.3d at 1059. However, "where an officer's actions are attributable to bad faith, immunity does not apply whether an act is discretionary or not." *Id.* (quoting *Falline v. GNLV Corp.*, 823 P.2d 888, 891–92 (Nev. 1991)).

Where an officer willfully or deliberately disregards the rights of a particular citizen during the arrest or search of that citizen, the officer's conduct results in—or is done in—bad faith, and thus, the officer is not entitled to discretionary immunity. *Davis*, 478 F.3d at 1060. Further, summary judgment is not appropriate where disputed issues of material fact exist with respect to whether an officer's conduct was in bad faith. *Id.* Here, as explained above, there is a genuine issue of material fact regarding Officer Nielson's conduct—specifically, his use of excessive force at Plaintiff's traffic stop. Given this contested issue of material fact, the Court is precluded from granting summary judgment in favor of Officer Nielson on Plaintiff's negligence and IIED claims on the basis of discretionary immunity.

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that LVMPD's Motion for Summary Judgment, (ECF No. 108), is **GRANTED**. Accordingly, LVMPD is terminated from the case.

**IT IS FURTHER ORDERED** that Officer Scott Nielson's Motion for Summary Judgment, (ECF No. 109), is **GRANTED in part and DENIED in part**. Specifically, the Court grants summary judgment for Officer Nielson on Plaintiff's probable cause and false arrest claims. However, the Court denies summary judgment on Plaintiff's excessive force, IIED, and negligence claims.

**IT IS FURTHER ORDERED** that Plaintiff and Officer Nielson shall have thirty days from the issuance of this Order to file a Proposed Joint Pretrial Order.

**DATED** this __18__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge